NOT FOR PUBLICATION                                                                    CLOSED

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____
                                            :
STANLEY FOOTE,                              :
                                            :    Civil Action No. 12-3094  (SRC)
                    Petitioner,             :
                                            :
        v.                                  :
                                            :
UNITED STATES OF AMERICA,                   :
                                            :    **OPINION**
                    Respondent.             :
_____:

**CHESLER**, District Judge

      Stanley Foote, a pro se petitioner ("Petitioner"), has moved to vacate, set aside or modify his sentence pursuant to 28 U.S.C. § 2255.  The Petition asserts that his federal charges were prosecuted without proper jurisdiction and, in addition, raises a claim of ineffective assistance of counsel.  Through his ineffective assistance claim, he principally challenges his trial counsel's representation as it relates to wiretap evidence produced at trial.  See ECF No. 7.  Petitioner requests an evidentiary hearing on his claims.  See id.

      The Government moves to dismiss the Petition on various grounds.  See ECF Nos. 12 to 20.  Petitioner has filed a traverse, and moves to amend his Petition to include a challenge based on Alleyne v. United States, 133 S. Ct. 2151 (2013).  This Court has considered the papers filed by the parties and, for the reasons detailed below, denies the Petition without an evidentiary hearing.[1]  The Court also denies Petitioner's request to amend.

---

[1] Since the underlying record unambiguously establishes that Petitioner is not entitled to relief, no evidentiary hearing is warranted.  See Gov't of V.I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989); see also Solis v. United States, 252 F.3d 289, 295 (3d Cir. 2001) ("a defendant [is] not entitled to a hearing if his allegations [are] contradicted conclusively by the record, or if the allegations [are] patently frivolous"); United States v. Essig, 10 F.3d 968, 976 (3d Cir. 1993) (only when a §

I.      BACKGROUND

The underlying criminal matter arose from a 2006 FBI investigation of a narcotics trafficking ring led by Petitioner, known under his alias "Murder," a ranking member of the Nine-Three set of the Bloods gang.  In light of that investigation, the FBA sought and obtained an order allowing its agents to intercept ("wiretap") Petitioner's conversations conducted through his cell phone.  During the three and a half weeks of that wiretap, Petitioner had numerous telephonic conversations with his girlfriend Barbara Manning ("Manning") and with Waleek Chandler ("Chandler"), Petitioner's close associate known under the alias "Reckless."  These conversations revealed that Petitioner, Chandler and Manning were conspiring to rob the house of Rory Harvey ("Harvey"), a drug dealer who was living in Newark with his family.[2]

On August 23, 2006, while Harvey was away but when Harvey's mother, sister and four children were at home, Chandler entered Harvey's house through the first-floor window and, upon pointing a gun at Harvey's sister and children, directed them to get down on the floor and open the front door to allow Petitioner inside.[3]  While Chandler was holding Harvey's sister and children at gunpoint, Petitioner searched through Harvey's bedroom for drugs and money.  Since Harvey had moved the drugs and money to another location shortly prior to the burglary, the search proved fruitless, and Petitioner and Chandler eventually left Harvey's house.  Harvey's mother, awaken by the burglary, alerted the police after the intruders left.  Meanwhile, the

---

2255 petition raises an issue of material fact, "the district court must hold a hearing to determine the truth of the allegations"); accord Brown v. United States, 45 F. App'x 92, 95 (3d Cir. 2002) ("if [the claim] is nonfrivolous [but] fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then [the claim] does not merit a hearing").

[2] Manning knew Harvey and was aware of his habit to keep money and drugs in the bedroom at the second floor of his house.  The conspirators had numerous telephonic discussions of the planned crime, and those conversations were recorded by the FBI.

[3] Harvey's mother was asleep in her bedroom when Chandler entered Harvey's house.

disappointed Petitioner renewed his cell-phone discussions with Manning, and subsequently had an in-person conversation with her. These conversations confirmed that the burglary had taken place.

On September 2, 2006, Petitioner was arrested. His indictment was returned on July 27, 2007, charging him with four counts, i.e., Hobbs Act conspiracy and Hobbs Act attempted robbery, brandishing of a firearm during a crime of violence, and carrying a second firearm. His trial convened on February 10, 2009. At trial, the Government's case relied, inter alia, on the testimony of Manning, members of Harvey's family, a neighbor who lived across the street from Harvey's house and who witnessed the burglary, FBI agents, wiretap recordings, and cell-site data. During the pre-trial and post-trial stages, Petitioner raised several jurisdictional challenges to his offenses. Numerous hearings were held to address those challenges, and all of Petitioner's applications were dismissed.

The jury found Petitioner guilty on the first three counts (the Hobbs Act conspiracy, Hobbs Act attempted robbery, and brandishing charges), but acquitted him on the second firearm charge. This Court sentenced him to two consecutive terms totaling 324 months.[4] A direct appeal followed attacking the testimony offered by the neighbor who lived across the street from Harvey's house but, despite Petitioner's challenge, his conviction was affirmed. See United States v. Foote, 432 F. App'x 151 (3d Cir. 2011).

On May 23, 2012, Petitioner filed the initial § 2255 motion that gave rise to the instant matter. See ECF No. 1. Petitioner was advised of his rights under United States v. Miller, 197 F.3d 644 (3d Cir. 1999). See ECF No. 3. He then withdrew his initial § 2255 motion, see ECF Nos. 4 to 6, and filed the Petition at bar. See ECF No. 7.

---

[4] Chandler pled guilty to interference with commerce by threat of violence, and this Court sentenced him to 169 months.

**II.     DISCUSSION**

Pursuant to section § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress," may move to vacate, set aside or correct his sentence where he claims:

> that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255; see also U.S. v. Thomas, 713 F.3d 165, 171 (3d Cir. 2013). "Section 2255 permits relief for an error of law or fact only where the error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" U.S. v. Eakman, 378 F.3d 294, 298 (3d Cir. 2004) (quoting United States v. Addonizio, 442 U.S. 178, 185 (1979)). Petitioner is a pro se litigant. A pro se pleading is held to less stringent standards than more formal pleadings filed by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972). Correspondingly, this Circuit's jurisprudence directs that a pro se petition, such as the one at bar, should be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998). However, even applying this generous standard, the Court finds that the Petition must be denied.

**A.     Jurisdictional Challenge**

As noted, Petitioner extensively litigated his jurisdictional challenges during the pre- and post-trial stages of his criminal matter. Now, he raises the same challenge anew. While, arguendo, he may raise a jurisdictional claim on collateral review, see United States v. Addonizio, 442 U.S. 178, 185 (1979), this claim was and still is substantively meritless and, being raised anew, brings Petitioner dangerously close to abusing the writ.[5]

---

[5] Where a habeas litigant is attempting to re-litigate the very same issue time and again, or where the litigant raises claims already known to him as facially meritless, it is well within the broad scope of the All Writs Act, 28 U.S.C. § 1651(a), for a district court to issue an order restricting such frivolous filings. See e.g., In Re Oliver, 682 F.2d 443, 445 (3d Cir. 1982) (citing Lacks v. Fahmi, 623 F.2d 254 (2d Cir. 1980) (per curiam); Harrelson v. United States, 613 F.2d

4

Petitioner was charged with violations of the Hobbs Act since the object of his crime included heroin, cocaine and U.S. currency. The Hobbs Act states, in relevant part,

> Whoever in any way or degree . . . affects commerce . . . by robbery . . . or conspires so to do, or commits or threatens physical violence to any person . . . in furtherance of a plan or purpose to do anything in violation of this section, shall be . . . imprisoned not more than twenty years . . . . The term "commerce" means . . . commerce between any point in a State [and] any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

18 U.S.C. §1951.

Reflecting on the scope of the Hobbs Act, the Court of Appeals has observed:

> The Hobbs Act defines commerce broadly . . . . [See United States v.] Walker, 657 F.3d [160,] 179 [(3d Cir. 2011)]; see also Stirone v. United States, 361 U.S. 212, 215 (1960) ("[The Hobbs Act] speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence"). This Court has held that "proof of a de minimis effect on interstate commerce is all that is required" in a Hobbs Act prosecution. United States v. Urban, 404 F.3d 754, 766 (3d Cir. 2005). Further, such a de minimis effect need only be "slight, subtle or even potential." United States v. Haywood, 363 F.3d 200, 210 (3d Cir. 2004).

United States v. Gassew, 519 F. App'x 764, 766 (3d Cir. 2013).

A defendant's attempt to rob a drug dealer provides a "realistic possibility of interstate effects because 'the robbery of cocaine dealers has an effect on interstate commerce.'" United States v. Muratovic, 719 F.3d 809, 814 (7th Cir. 2013) (citing United States v. Bailey, 227 F.3d 792, 799 (7th Cir. 2000), and United States v. Thomas, 159 F.3d 296, 297-98 (7th Cir. 1998), for the discussion of an aggregated interstate effect of drug trafficking); accord Mason v. Zickefoose, 525 F. App'x 81, 83 (3d Cir. 2013) ("attempting to rob a drug dealer who traveled to

---

114, 115 (5th Cir. 1980) (per curiam); Clinton v. United States, 297 F.2d 899, 901 (9th Cir. 1961), cert. denied, 369 U.S. 856, 82 S. Ct. 944, 8 L. Ed. 2d 14 (1962)). This is so because if a petitioner continues to raise – or paraphrase – his already dismissed challenges, he risks abusing the equitable nature of the habeas writ. See Sanders v. United States, 373 U.S. 1, 17-19 (1963); Furnari v. United States Parole Comm'n, 531 F.3d 241, 250 (3d Cir. 2008). Perhaps the extensive trial-level litigation was the reason for Respondent's election to wholly omit the jurisdictional issue in Respondent's answer to the Petition.

[one state] from [another] to buy drugs . . . affected interstate commerce"). Here, the Government based its case on the fact that cocaine and heroin are not indigenous to the State of New Jersey and, thus, must have traveled in interstate commerce (and the U.S. currency, being fungible, is presumed to travel in interstate commerce).[6] Nothing in Petitioner's submissions disputes or could dispute these facts. Thus, his renewed jurisdictional challenge warrants no relief.

   B.   **Ineffective Assistance of Counsel**

The Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984), sets forth the standard for establishing a claim that a defendant's Sixth Amendment right to effective assistance of counsel has been violated. The Strickland Court held:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687; see also Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999). The defendant bears the burden of demonstrating ineffective assistance of counsel. See United States v. Baynes, 622 F.2d 66, 69 (3d Cir. 1980).

Under the first prong, the defendant must show "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms." United States v. Sanders, 165 F.3d 248, 250 (3d Cir. 1999). Under the prejudice prong, the defendant must

---

[6] "It is of no moment . . . that the commodity traveling in interstate commerce [e.g., a controlled substance,] is illegal under federal law [since] the Hobbs Act is not confined either by its language or its legislative history to require some effect on goods traveling legally in interstate commerce." United States v. Jones, 30 F.3d 276, 286 (2d Cir. 1994).

demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The burden on the defendant challenging his conviction on the basis of ineffective assistance is a heavy one. See id. at 689-90. This Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 698; see also George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001). "[I]t is 'only the rare claim of ineffectiveness of counsel that should succeed.'" Buehl, 166 F.3d at169 (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir.1989)).

### 1. Wiretap Claims

Petitioner raises vague claims based on the wiretap of his cell phone. On the one hand, he alleges that his counsel failed to "investigate" the legality of the wiretap; on the other hand, he suggests that the fruits of the wiretap were wholly unrelated to the subject matter of his prosecution. From that, Petitioner deduces that his counsel should have sought dismissal of his indictment and/or suppression of the wiretap's fruit. Petitioner errs.

The wiretap was performed pursuant to a properly obtained order authorizing the interception of Petitioner's communications for the purposes of certain offenses.[7] Each count upon which Petitioner was convicted directly related to Petitioner's objective to obtain Harvey's controlled substances and funds, and Petitioner's illicit activities that caused the FBI to institute its investigation ab initio. While it is conceivable that the FBI obtained the wiretap order without

---

[7] I.e., the wiretap was based on the statutes prohibiting the use of a communication facility, such as a cell phone, in committing or in causing or facilitating the commission of a controlled substance felony, conspiracy to distribute controlled substances or possess them with intent to distribute, distribution of controlled substances or possession with intent to distribute, racketeering, money laundering, conspiracy to do the same, fraud, etc.

an expectation that Petitioner would be sourcing his narcotics operations through such unorthodox means as burglarizing the houses of other drug dealers, nothing in the statutes invoked in the wiretap order could render such "sourcing" irrelevant to the narcotics operations investigated by the FBI. Since there was a clear nexus between the statutory mandates underlying the wiretap order and Petitioner's Hobbs Act conspiracy and attempted robbery prosecution, as well as the use of a firearm in connection with the latter, it would have been futile for Petitioner's counsel to seek dismissal of the indictment or suppression of evidence obtained as a result of the wiretap on the basis of a lack of nexus. Hence, this claim fails to meet both Strickland prongs.

Petitioner's other contention, i.e., that his counsel failed to "investigate the illegality" of the wiretap order, is also misguided. Since the Petition asserted that the wiretap was "illegal" but did not specify the nature of the alleged "illegality," Respondent construed this claim as asserting that Petitioner's counsel should have sought a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1986). At a Franks hearing, a defendant may assert that the warrant authorizing a wiretap was based on a false affidavit and otherwise lacks sufficient probable cause.[8]

To the extent that Petitioner is, in fact, bringing a Franks claim, Respondent's answer correctly argues that Petitioner's claim is devoid of any factual predicate. See ECF No. 12, at 23 (noting that the wiretap order was issued by a district judge on the basis of ample probable cause that was established by materials free from misrepresentations that could call into question the

---

[8] More specifically, "[u]nder Franks, if a defendant makes a substantial preliminary showing that 1) a false statement was included by the affiant in an affidavit supporting a search warrant, either knowingly and intentionally or with reckless disregard for the truth and 2) the allegedly false statement is necessary to a finding of probable cause, then the false material in the affidavit is to be set aside and the sufficiency of the affidavit to establish probable cause is to be judged by the remaining material." United States v. Calisto, 838 F.2d 711, 713 (3d Cir. 1988).

validity of the procured order). Perplexingly, Petitioner states in his response to Respondent's motion to dismiss:

> Because [Petitioner] does not argue that there was a deliberate or reckless misrepresentation in the wiretap or related materials, and because there was am[p]le probable cause for the wiretap, [the Petition intentionally omitted to detail the nature of the alleged "illegality" since] any challenge or frank claim [by Petitioner] would have been meritless.

ECF No. 27, at 22-23.

By making this statement, Petitioner effectively concedes that his "illegality" claim lacks merit, and that it amounts to a mere expression of his displeasure with the fact that the wiretap order was procured. "Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). This means that a habeas application must set forth "facts supporting each of the grounds." See 28 U.S.C. § 2254 Rule 2(c) (am. Dec. 1, 2004, applicable to § 2255 through Habeas Rule 1(b)). Since Petitioner's response effectively concedes that he has no relevant facts or legal bases, and the record verifies that counsel properly elected not to raise such frivolous challenge, the "illegality" claim also fails to meet either Strickland prong.[9]

Petitioner's remaining contention is that the evidence derived from the wiretap was unlawfully disclosed to a grand jury in violation of 18 U.S.C. § 2517(5), and thus Petitioner's counsel was ineffective for failing to move to suppress it. See ECF No. 27, at 10-17. This argument is meritless. The Third Circuit law on this subject is clear – "Title III [of the Omnibus

---

[9] Moreover, Petitioner failed to raise any "illegality" claim on direct appeal. He cannot overcome this failure by "stitching" his unraised appellate claim to an ineffective assistance claim on collateral review. Sellers v. United States, No. 14-0388, 2014 U.S. Dist. LEXIS 11419, at *5 (D.N.J. Jan. 30, 2014). Neither can Petitioner now speculate that "something was rotten in the state of Denmark." Kaplan v. United States Office of Thrift Supervision, 104 F.3d 417, 423 (D.C. Cir. 1997). Finally, this Court is not obligated, or even allowed, to instruct Petitioner on how to properly raise and frame his claim. See Toolasprashad v. Wright, 2008 U.S. Dist. LEXIS 90220 (D.N.J. Nov. 3, 2008) (observing that "[d]istrict judges have no obligation to act as counsel or paralegal to pro se litigants" (quoting Pliler v. Ford, 542 U.S. 225, 231-32 (2004))).

Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520] does not prescribe suppression as a remedy for a disclosure violation." United States v. Williams, 124 F.3d 411, 426 (3d Cir. 1997). The two cases that form the basis of Petitioner's argument – United States v. Marion, 535 F.2d 697 (2d Cir. 1976), and United States v. Brodson, 528 F.2d 214 (7th Cir. 1975) – have been explicitly rejected by the Third Circuit. See Williams, 124 F.3d at 427 n.11 ("these decisions [Marion and Brodson] are contrary to controlling precedents of our Court"). Thus, even if this Court assumes that the wiretap evidence was in fact improperly disclosed, Petitioner's counsel could not have been ineffective within Strickland's ambit for failing to argue that such evidence should be suppressed.

### 2. Petitioner's Multiplicity Argument

Two other claims raised by Petitioner maintain that the charges against him were "duplicitous." These claims are stated with less than exemplar clarity. Respondent construes, and not unreasonably, that Petitioner aims to assert that: (a) he was charged, under two different counts (one "conspiracy" and another "attempt") for the very same actions associated with the robbery of Harvey's house; and (b) he was also charged twice, albeit in a single count, with brandishing of a firearm, since his indictment as to that charge utilized a dual-verb phrase "use and brandish." Respondent construes these claims as an assertion of multiplicity, or the "charging of the same offense in two or more counts of an indictment or information." See United States v. Stanfa, 685 F.2d 85, 86-87 (3d Cir. 1982). Respondent argues that Petitioner's position evinces nothing but his confusion as to the workings of law and meaning of legal terminology.

This Court agrees with Respondent's construction and concludes that Petitioner's argument is meritless. While conspiracy and attempt are inchoate offenses,

> [law] does not proscribe convictions for both conspiracy and an attempt. In fact it is well-settled that conspiracy can be separately charged and punished along with any crime, which may be the object of the conspiracy. The offenses of attempt[] . . . and conspiracy have different elements. Conspiracy requires an agreement to commit an offense and an overt act, while attempt lacks the agreement element and requires an overt act beyond mere preparation.

United States v. Hester, 2005 CCA LEXIS 85, at *3 (N-M.C.C.A. Mar. 15, 2005) (citing, inter alia, Iannelli v. United States, 420 U.S. 770, 777 (1975)); see also United States v. Caulfield, 72 M.J. 690, 694 (C.G.C.C.A. 2013) ("[While] both attempt and conspiracy include as elements the accused's intent to commit the target offense[, i]t is apparent that conspiracy requires an agreement among two or more individuals, which is not required for attempt. It is also apparent that, while both offenses require an overt act, the overt act for an attempt must amount to more than mere preparation and must tend to effect the commission of the intended offense – elements that are not required for conspiracy. Clearly, the two offenses are not multiplicious under the elements test"). Since, here, the goal of Petitioner's conspiracy was *reaching an agreement* with Manning and Chandler, while the goal of his and Chandler's invasion of Harvey's house was *attempting a robbery*, his conspiracy and attempt charges were not multiplicious.

  As for Petitioner's challenge to the firearm count, Petitioner fails to respond, in his opposition papers, to Respondent's argument regarding the count's utilization of "use and brandish." This Court finds no legal basis for concluding that the dual-verb phrase "use and brandish" employed in the indictment somehow subjected Petitioner to two distinct and different charges for the same offense. Accordingly, this claim will be dismissed without further discussion.

  For the aforesaid reasons, Petitioner's counsel's election to avoid raising a frivolous challenge based on the separate charges of conspiracy and assault could not have violated either prong of Strickland. Neither could counsel's election to avoid challenging the indictment on the

ground that one charge employed the dual-verb phrase "use and brandish" violate Strickland. Hence, Petitioner's challenges on these grounds warrant no relief.

### 3. Remaining Challenges

Finally, throughout his submissions, Petitioner "hints" that there are other instances of ineffective assistance; however, the Court has discerned that no other viable claims exist.[10] More to the point, the evidence against Petitioner adduced at trial was overwhelming. Thus, even if this Court were to assume, for the sake of argument, that counsel's choices could be questioned under the first Strickland prong, and they cannot be, Petitioner suffered no prejudice within the meaning of the second prong of Strickland. Hence, his Petition is denied in its entirety.

### 4. Alleyne Claim

The Court denies Petitioner's motion to amend his Petition and add a claim pursuant to Alleyne. See ECF No. 25. This claim presents a second/successive § 2255 motion filed without leave. Accord Boretsky v. Ricci, 2012 U.S. Dist. LEXIS 37239, at *12-14 (D.N.J. Mar. 20, 2012). As noted above, Petitioner raises his Alleyne claim after (1) being advised of his Miller rights; (2) submitting his all-inclusive Petition; and (3) after Respondent answered the Petition. Hence, the Alleyne claim must be dismissed for lack of jurisdiction. Moreover, even if Petitioner's Alleyne claim been raised in the Petition ab initio, it would still be dismissed since Alleyne does not apply retroactively to cases on collateral review. See United States v. Galindez, 2014 U.S. App. LEXIS 2887, at *5 (3d Cir. Feb. 18, 2014) ("Alleyne . . . has not been

---

[10] Although Petitioner once referred to his defense counsel who represented him during the trial and on appeal as "my trial and appellate counsel," the claims Petitioner raised do not relate to the appellate process and, thus, cannot implicate his Sixth Amendment rights on appeal.

12

made retroactively applicable by the Supreme Court" (citing Simpson v. United States, 721 F.3d 875, 876 (7th Cir. 2013))).[11]

### III.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken from a final order in a § 2255 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Here, this Court denies a certificate of appealability since jurists of reason would not find it debatable that Petitioner failed to make the requisite showing.

### IV.  CONCLUSION

For the foregoing reasons, Respondent's motion to dismiss will be granted, and the Petition will be denied.  The Court also denies Petitioner's request to amend his petition.  No certificate of appealability will issue.

An appropriate Order follows.

   /s/_____
**STANLEY R. CHESLER**
United States District Judge

Dated: March 24th, 2014

---

[11] In addition, since Petitioner's jurors were polled as to the brandishing-of-firearm issue in a special verdict form, his Alleyne challenges are meritless because they lack a factual predicate, and the challenges would be dismissed even had they been raised in a post-trial application.